## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

DEXTER PALMER,

              Plaintiff,

    v.

ELIZABETH MARTYN, et al.,

              Defendants.

CIVIL ACTION NO.: 5:22-cv-39

## REPORT AND RECOMMENDATION

      Defendants Martyn, Hammock, Clark, Payne, Cross, Little, Hall, and Hattaway ("the State Defendants")[1] filed a Motion for Summary Judgment. Doc. 67. Plaintiff filed a Response.[2] Doc. 82. The State Defendants filed a Reply. Doc. 88. For the following reasons, I **RECOMMEND** the Court **GRANT** the State Defendants' Motion for Summary Judgment, **DISMISS** the State Defendants, and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal as to these Defendants. I further **RECOMMEND** the Court **DENY** Plaintiff *in forma pauperis* status on appeal.

---

[1]     There are 10 Defendants in this case. The 8 Defendants who filed this Motion for Summary Judgment appear to have been State employees and are represented by counsel from the Georgia Department of Law. See Doc 23. The other two Defendants—Defendants Turner and Harris—were employed by private agencies and are represented by counsel from a private law firm. Defendants Turner and Harris also moved for summary judgment, doc. 59, which I will address separately.

[2]     Plaintiff's Response to Defendants' Motion for Summary Judgment responds to two motions for summary judgment: the first filed by Defendants Turner and Harris, doc. 59, and the second filed by the State Defendants, doc. 67. In this Report, I consider Plaintiff's Response as it pertains to the State Defendants' Motion for Summary Judgment.

**BACKGROUND**

Plaintiff, proceeding pro se, brought this 42 U.S.C. § 1983 action, alleging violations of his constitutional rights while incarcerated at Ware State Prison.  Doc. 1.  Plaintiff filed an Amended Complaint, which is the operative Complaint, alleging deliberate indifference to a serious medical need against 10 Defendants, some medical personnel and some non-medical correctional officers.  Doc. 21.

Plaintiff alleged he was denied medical treatment for two weeks, beginning when he slipped and fell in water leaking on the prison floor on July 16, 2020.  Id. at 13–18.  Plaintiff saw a medical professional, Defendant Martyn, a few hours after the fall.  Id. at 13.  Defendant Martyn told Plaintiff his hand looked broken and arranged an x-ray for the next day.  Plaintiff was not taken for an x-ray the next day.  Id. at 13–14.  Plaintiff alleged he unsuccessfully pleaded with Defendant nurses and prison officials for days to be taken for an x-ray and treatment.  Id. at 14–17.  Plaintiff did not receive an x-ray until July 30, 2020.  A doctor diagnosed Plaintiff with a broken hand and conducted surgery on August 3, 2020.  Id. at 18.  Plaintiff claimed his hand "healed deformed."  Id. at 20.  Plaintiff seeks monetary damages and injunctive relief to have his hand "restructured."  Id.

After conducting frivolity review of Plaintiff's Amended Complaint, the Court permitted Plaintiff to proceed with Eighth Amendment deliberate indifference to serious medical needs claims against the 10 named Defendants.  Doc. 31.

**UNDISPUTED MATERIAL FACTS**

**I.    The Parties' Submissions**

The State Defendants submitted a Statement of Material Facts ("Defendants' SMF") in support of their Motion for Summary Judgment, in accordance with the Federal Rules of Civil

Procedure and Local Rule 56.1.  Doc. 67-1.  Defendants' SMF relies on: Defendant Martyn's interrogatory responses, doc. 67-3; Defendant Hattaway's interrogatory responses, doc. 67-4; Defendant Cross's interrogatory responses, doc. 67-5; Defendant Little's interrogatory responses, doc. 67-6; Defendant Payne's interrogatory responses, doc. 67-7; Defendant Turner's affidavit, doc. 67-8; and the transcript of Plaintiff's deposition, doc. 67-9.

Although Plaintiff responded to the State Defendants' Motion for Summary Judgment, Plaintiff did not include a separate SMF.  Doc. 82.  Plaintiff makes some factual contentions in his Response.  Plaintiff relies on medical records, docs. 82-1, 82-5, 82-6; a Georgia Department of Corrections' policy for urgent and emergent care services, doc. 82-2; the sworn statement of Kevin Welchel, doc 82-3; and prison grievance records, docs. 82-4, 82-7.  However, many of Plaintiff's own factual allegations and his general efforts to dispute the State Defendants' factual allegations are not supported by the record.  These must be disregarded for the purpose of summary judgment.  See Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (stating plaintiff's "conclusory assertions . . ., in the absence of supporting evidence, are insufficient to withstand summary judgment"); see also Williams v. Slack, 438 F. App'x 848, 849–50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections).  Accordingly, the facts recited below represent the facts in the record and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party.  See Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.    Undisputed Material Facts

Plaintiff's claims arise from an injury to his hand caused by a slip-and-fall accident. None of the Defendants were present when Plaintiff fell.  Doc. 67-9 at 38.  Plaintiff claims Defendants are liable for their acts and omissions after the accident.

### A.    July 16, 2020

Plaintiff was incarcerated at Ware State Prison in Waycross, Georgia, on July 16, 2020. Id. at 17.  On that date, Plaintiff injured his hand when he slipped and fell on some moisture on the ground.  Id. at 38–40.  A few hours later, a fellow inmate saw Plaintiff and notified Defendant Hattaway, a non-medical correctional officer, about Plaintiff's injury.  Id. at 38–44. Defendant Hattaway arrived and promptly sent Plaintiff to the medical unit for treatment.  Id. at 40.

Defendant Martyn treated Plaintiff.  Id. at 45–46.  Defendant Martyn was a nurse practitioner at the prison.  Doc. 67-3 at 4.  Based on Defendant Martyn's observations, it did not appear Plaintiff's injuries required an immediate offsite x-ray or any other immediate emergency treatment at a hospital.  Id. at 4–6.  A non-medical correctional officer who was present, Defendant Little, commented Plaintiff's hand looked broken.  Doc. at 67-9 at 68.  But this observation by a non-medical professional would not have affected Defendant Martyn's treatment.  Doc. 67-3 at 7.

Defendant Martyn provided Plaintiff with a non-prescription pain reliever and ice and put Plaintiff's hand in a sling.  Id. at 4–5; Doc. 67-9 at 46.  Defendant Martyn also placed an order for Plaintiff to receive an x-ray.  Doc. 67-3 at 4.  Plaintiff was scheduled to receive an x-ray the next day, Friday, July 17, 2020.  Doc. 67-9 at 46.  Outside x-ray technicians were usually brought into Ware State Prison to conduct x-rays.  Doc. 67-8 at 3.  Defendant Martyn had no

4

further involvement in the x-ray process, and her work schedule did not include the day when x-rays usually occurred, so she was not present or involved in further scheduling or arranging Plaintiff's x-ray.  Doc. 67-3 at 6–7.

### B.    July 17, 2020

On July 17, 2020, Ware State Prison went on a facility-wide security lockdown based on a fatal inmate-on-inmate assault.  Doc. 67-9 at 49–50.  During a security lockdown, any x-ray technicians scheduled to come into the prison would have had to reschedule their visit.  Doc. 67-8 at 3.

Plaintiff saw Defendant Payne, a non-medical correctional officer, while Payne was securing the facility for the lockdown.  Doc. 67-9 at 81–82.  Plaintiff asked Defendant Payne to contact the medical unit to follow up about the x-ray.  Id.  Plaintiff also saw Defendant Cross, a non-medical correctional officer, in the hallway, and Plaintiff asked her to contact the medical unit about the status of his x-ray.  Id. at 84–86.  Defendant Cross saw Plaintiff's hand had been wrapped and concluded medical staff had seen Plaintiff.  Doc. 67-5 at 4–5.  Defendant Cross saw Plaintiff's hand was swollen, but she did not know it was broken.  Id. at 6–7.  At 7:00 p.m., Plaintiff saw Defendant Hammock, a non-medical correctional officer, in the hallway and asked Hammock to contact the medical unit for further follow-up.  Doc. 67-9 at 71.

### C.    July 18, 2020

On the morning of July 18, 2020, Plaintiff complained about his hand to Defendant Hammock again.  Id. at 73–76.  Defendant Hammock returned during pill call with two nurses, including Defendant Hall.  Id. at 74–75.  Plaintiff told Defendant Hall he was in excruciating pain and needed to see an outside doctor for treatment.  Id. at 75–77.  Defendant Hall said she

would have to talk to the supervising doctor about Plaintiff's request. Defendant Hall provided Plaintiff with Tylenol and an icepack. Id.

### D.    July 19, 2020

On July 19, 2020, Plaintiff spoke with Defendant Hammock again. Id. at 72. Plaintiff also told Defendant Little he needed to go to the medical unit for his hand. Id. at 64–65. Defendant Little contacted the medical unit on Plaintiff's behalf. Doc. 67-6 at 5. Defendant Little was informed Plaintiff had already been seen by medical staff about his hand, so he did not need to be taken to the medical unit again for the same condition. Id.

### E.    July 20, 2020

On July 20, 2020, Plaintiff informed Defendant Hattaway he needed to be seen in the medical unit. Doc. 67-9 at 47. Defendant Hattaway contacted the medical unit. Doc. 67-4 at 4. Defendant Hattaway was informed Plaintiff had already been seen for the same condition, x-ray technicians only come on Fridays, and Plaintiff would be scheduled for an x-ray accordingly. Id. at 4–5.

### F.    July 21, 2020

On July 21, 2020, Defendants Clark, Turner, and Harris, all of whom are nurses, saw Plaintiff. Doc. 67-9 at 79–81. Plaintiff showed Defendant Clark his hand. Id. at 80. Defendant Clark informed Plaintiff prisoners were never sent to an outside doctor for a fractured hand. Id. at 81. Defendant Clark told Plaintiff a broken hand is not a serious medical issue. Id. Defendant Turner said there was nothing they could do until Plaintiff's swelling decreased. Id. at 79.

### G.    Events after July 21, 2020

The security lockdown at Ware State Prison lasted through July 30, 2020. Id. at 50. On July 30, 2020, Plaintiff was taken to see an outside medical doctor who examined Plaintiff and

took an x-ray of Plaintiff's hand.  Id. at 54–55.  The doctor scheduled Plaintiff for emergency surgery and operated on Plaintiff on August 3, 2020.  Id. at 55.  Plaintiff had a second surgery on August 22, 2021.  Id. at 87.  Plaintiff received physical therapy after each surgery.  Id. at 145–46.

## DISCUSSION

### I.    Standard of Review

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the non-moving party] is merely colorable or is not significantly probative, summary judgment must be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the non-moving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the non-

moving party's case or the non-moving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).

Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial.  Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the non-moving party.  Peek-A-Boo Lounge, 630 F.3d at 1353.  As the Eleventh Circuit Court of Appeals has explained, "The facts at the summary judgment stage are not necessarily the true, historical facts or what a jury may ultimately find.  Instead, the facts at this stage are what a reasonable jury could find from the evidence . . . viewed in the light most favorable to the non-moving party."  Johnson v. City of Miami Beach, No. 20-10834, 2021 WL 5414410, at *1 (11th Cir. Nov. 19, 2021).

## II.    Legal Standard for Eighth Amendment Deliberate Indifference Claims

The Eighth Amendment "prohibits 'deliberate indifference to serious medical needs of prisoners.'"  Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 103–04 (1976)).  To establish liability for a deliberate indifference claim, a plaintiff inmate must "shoulder three burdens."  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  The plaintiff inmate must demonstrate: (1) he had a serious medical need; (2) the defendant prison official acted with deliberate indifference; and (3) the defendant's wrongful conduct caused the plaintiff injury.  Id.

As to the second requirement—that the defendant acted with deliberate indifference—the plaintiff inmate must show the defendant acted with "subjective recklessness as used in the criminal law."  Wade v. McDade, 106 F.4th 1251, 1253 (11th Cir. 2024) (quoting Farmer v.

Brennan, 511 U.S. 825, 839, 844–45 (1994)).  That means the plaintiff must show the defendant "was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff . . . ."  Id. at 1262.  In addition to this subjective awareness, the plaintiff inmate must show the defendant disregarded the risk by acting or failing to act in an *objectively* reasonable way.  Id. (J. Jordan, concurring).  Consequently, regardless of the defendant's subjective belief, a defendant will not be liable if he "responded reasonably" to the substantial risk.  Id at 1253.

Because a defendant violates the Eighth Amendment only when he acts with subjective recklessness, mere medical malpractice or negligence are not constitutional violations.  Estelle v. Gamble, 429 U.S. 97, 103–04 (1976).  Medical prison officials are entitled to utilize their medical judgment when treating inmates.  See id. at 107.  Therefore, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not constitute a constitutional violation.  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)); Sifford v. Ford, 701 F. App'x 794, 795 (11th Cir. 2017) (citing Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985)).

## III.    Analysis

The State Defendants argue they are entitled to summary judgment because the undisputed material facts demonstrate they did not act with deliberate indifference.[3]  Doc. 67-2 at 8–13.  Specifically, the State Defendants argue there is no evidence any State Defendant acted in

---

[3]    Plaintiff devotes much of his briefs to arguing his broken hand constituted a serious medical need. The State Defendants do not argue Plaintiff's broken hand was not a serious medical need; the State Defendants simply do not challenge that issue in their Motion.  Doc. 88 at 4.  The Court, therefore, does not address this component of the deliberate indifference requirements further.

an objectively unreasonable way and there is no evidence any State Defendant acted with subjective recklessness.[4]  Doc. 67-2 at 9.  The State Defendants also argue Plaintiff's claim is based on delay in care, and, therefore, Plaintiff is required to point to verifying medical evidence to support the claim the delay caused or otherwise exacerbated the injury, which he has not done. Id.  In other words, the State Defendants argue there is an absence of proof of causation.  Finally, the State Defendants argue they are entitled to qualified immunity.  Id. at 13–14.

Plaintiff opposes the State Defendants' Motion.  Doc. 82.  Plaintiff argues there are genuine disputes of material fact about the State Defendants' actions, so they are not entitled to summary judgment.

Given the nature of Plaintiff's claims, the State Defendants are properly divided in to "Medical Defendants" (i.e., Defendant Martyn, a nurse practitioner, and Defendants Hall and Clark, two nurses) and the "Non-Medical Defendants" (i.e., correctional officers Defendants Hammock, Payne, Cross, Little, and Hattaway).  The Medical Defendants are addressed first; the Non-Medical Defendants next.

## A.  Medical Defendants

Plaintiff claims the Medical Defendants violated the Eighth Amendment by denying and delaying medical treatment for his broken hand.  Doc. 21 at 9–10, 11.  Although the specifics of Plaintiff's claims are somewhat ambiguous, the crux of Plaintiff's theory is he should have received an x-ray of his hand sooner (presumably, off-site and on an emergency basis) and surgery on his hand should have been performed sooner.

---

[4]     The State Defendants argue the evidence fails to demonstrate they acted with "more than mere negligence."  Doc. 67-2 at 11.  The State Defendants filed their brief before Wade was decided and understandably invoked the now-discarded "more than mere negligence" language.  Even so, the Court can reasonably read the State Defendants' Motion to attack Plaintiff's proof on the subjective component of the deliberate indifference standard, which is described in Wade as "subjective recklessness as used in the criminal law."

The Medical Defendants argue there is no evidence they were subjectively reckless or acted objectively unreasonably or their conduct caused or exacerbated Plaintiff's injuries. Doc. 67-2.  To the contrary, the Medical Defendants argue the undisputed material facts show they properly examined and treated Plaintiff.  Each Medical Defendant is addressed separately.

### 1.    *Defendant Martyn.*

Defendant Martyn examined Plaintiff's hand and treated Plaintiff on July 16, 2020, a few hours after Plaintiff's slip-and-fall injury.  Doc. at 67-9 at 43–46.  Defendant Martyn determined Plaintiff's injuries did not require immediate offsite treatment for an x-ray or any other immediate emergency treatment at a hospital.  Doc. 67-3 at 4–6.  Defendant Martyn provided Plaintiff with a non-prescription pain reliever and ice and put his hand in a sling.  Id. at 4–5; Doc. 67-9 at 46.  Defendant Martyn also placed an order for Plaintiff to receive an x-ray the next day.  Doc. 67-3 at 4; Doc. 67-9 at 46.  Defendant Martyn had no further involvement in the x-ray process.  Doc. 67-3 at 6–7.

Plaintiff presents no evidence to show Defendant Martyn was subjectively aware her own conduct would cause Plaintiff a substantial risk of serious harm or Defendant Martyn failed to act in an objectively reasonable way.  Indeed, the record shows the opposite—Defendant Martyn provided Plaintiff treatment based on her observations of Plaintiff's injuries and scheduled him for further evaluation.  Plaintiff points to no evidence Defendant Martyn was responsible for providing the x-ray she ordered or she was even aware Plaintiff did have an x-ray the next day. At most, Plaintiff presents a mere difference of medical opinion with Defendant Martyn about the proper course of treatment, which does not constitute a constitutional violation.

Plaintiff argues Defendant Martyn knew he needed urgent medical care because Defendant Little said Plaintiff's "hand looks like a boxer fracture."  Doc. 82 at 5.  Plaintiff

provides a contemporaneous record of Defendant Martyn's exam to prove Defendant Martyn heard Defendant Little's statement. It includes a handwritten note that appears to state, "No Boxer's fx." Doc. 82-1. Plaintiff's evidence does not demonstrate subjective recklessness. In fact, it shows Defendant Martyn evaluated Plaintiff for a possible fracture and ordered an x-ray promptly after Plaintiff was brought to Defendant Martyn. The record of Defendant Martyn's diagnosis indicates no medical urgency or emergency needing immediate attention beyond her own treatment. Nothing about Defendant Martyn's decision to order a routine x-ray suggests recklessness on her part.

Plaintiff argues Defendant Martyn violated prison procedures by failing to send him for urgent or emergency care outside the prison. Doc. 82 at 10–12. Whether Martyn violated a prison procedure is largely immaterial. A "failure to follow procedures does not, by itself, rise to the level of deliberate indifference . . . ." Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000); see also Nam Dang by and through Vina Dang v. Sheriff, Seminole Cnty., 871 F.3d 1272, 1282 (11th Cir. 2017) ("A violation of Jail policy does not in itself rise to the level of deliberate indifference."). Moreover, Plaintiff does not show Defendant Martyn failed to follow the procedure. Plaintiff offers a Department of Corrections' policy with certain requirements for emergency services. Doc. 82-2. Plaintiff points to no provision Defendant Martyn violated by failing to send Plaintiff off-site for treatment after she treated him and ordered an x-ray. Even if Plaintiff could show a violation of prison procedures, he would need show more to prove subjective recklessness. He has not.

Plaintiff has presented no evidence showing Defendant Martyn acted with subjective recklessness as used in criminal law or that Defendant Martyn failed to act in an objectively reasonable way. Thus, Defendant Martyn is entitled to summary judgment.

### 2.    *Defendant Hall.*

On July 18, 2020, Defendant Hall saw Plaintiff during pill call.  Doc. 67-9 at 74–77.

Plaintiff told Hall he was in excruciating pain and needed to see an outside doctor for treatment.

Id. at 75–77.  Defendant Hall said she would have to talk to the supervising doctor about

Plaintiff's request.  Id.  Defendant Hall provided Plaintiff with Tylenol and an icepack.  Id.

Plaintiff presents no evidence to show Defendant Hall was subjectively aware her own

conduct would cause Plaintiff a substantial risk of serious harm or that Defendant Hall failed to

act in an objectively reasonable way.  Instead, the evidence shows Defendant Hall treated

Plaintiff for pain.  Plaintiff offers nothing but a conclusion Defendant Hall failed to talk to the

supervising doctor about Plaintiff's request to see an outside doctor.  Even if Defendant Hall's

treatment was insufficient and she failed follow up on Plaintiff's request, nothing suggests

Defendant Hall was aware her conduct would place Plaintiff at substantial risk.  Because

Plaintiff has presented no evidence showing Defendant Hall acted with subjective recklessness as

used in criminal law and no evidence Defendant Martyn failed to act in an objectively reasonable

way, Defendant Hall is entitled to summary judgment.

### 3.    *Defendant Clark.*

On July 21, 2020, Defendant Clark saw Plaintiff along with two other nurses.  Doc. 67-9

at 79–81.  Plaintiff showed Defendant Clark his hand.  Id. at 80.  Defendant Clark informed

Plaintiff prisoners were never sent to an outside doctor for a fractured hand.  Id. at 81.

Defendant Clark told Plaintiff a broken hand is not a serious medical issue.  Id.  One of the two

other nurses, Defendant Turner, said there was nothing they could do until Plaintiff's swelling

decreased.  Id. at 79.

Plaintiff presents no evidence to show Defendant Clark was subjectively aware her own conduct caused Plaintiff a substantial risk of serious harm or Defendant Clark failed to act in an objectively reasonable way. Defendant Martyn had already ordered an x-ray of Plaintiff's hand, and there is nothing to show Defendant Clark intentionally delayed the x-ray. There is nothing to show Defendant Clark knew her action or inaction created a risk. The record shows Defendant Clark told Plaintiff he did not need further treatment. Even if Defendant Clark were wrong, this conduct would constitute, at most, medical malpractice. "Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris, 941 F.2d at 1505 (quoting Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986)). Plaintiff points to no evidence that would suggest Defendant Clark knew her actions would have exposed Plaintiff to a substantial risk of serious harm. Because Plaintiff has presented no evidence showing Defendant Clark acted with subjective recklessness as used in criminal law and no evidence Defendant Clark failed to act in an objectively reasonable way, Defendant Clark is entitled to summary judgment.

**B.    Non-Medical Defendants**

Plaintiff brings claims against five non-medical correctional officers: Defendants Hammock, Payne, Cross, Little, and Hattaway. Plaintiff claims each of these Defendants violated the Eighth Amendment by failing to facilitate an x-ray of his hand. Doc. 21 at 7–9, 11.

As with the Medical Defendants, the Non-Medical Defendants argue there is no evidence they were subjectively reckless or acted objectively unreasonably or their conduct caused or exacerbated Plaintiff's injuries. Doc. 67-2. Each Non-Medical Defendant is addressed separately.

14

### 1.    *Defendant Hattaway.*

On July 16, 2020, an inmate notified Defendant Hattaway, a non-medical correctional officer, about Plaintiff's injury.  Doc. 67-9 at 38–44.  Defendant Hattaway arrived at Plaintiff's location and promptly sent Plaintiff to the medical unit for treatment.  Id. at 40.  A few days later, on July 20, 2020, Plaintiff informed Defendant Hattaway he needed to be seen in the medical unit for his hand.  Id. at 47.  Defendant Hattaway contacted the medical unit.  Doc. 67-4 at 4.  Defendant Hattaway was informed Plaintiff had already been seen for the same condition, x-ray technicians only come on Fridays, and Plaintiff would be scheduled for an x-ray accordingly.  Id. at 4–5.  The record is not clear if Defendant Hattaway ever told Plaintiff what the medical unit stated.

Plaintiff presents no evidence to show Defendant Hattaway was subjectively aware his own conduct would cause Plaintiff a substantial risk of serious harm or that Defendant Hattaway failed to act in an objectively reasonable way.  On the contrary, the undisputed evidence shows Defendant Hattaway sought to assist Plaintiff by consulting the prison medical unit.  Nothing in the record suggests any subjective recklessness or objectively unreasonable conduct by Defendant Hattaway.

Plaintiff makes two unsupported arguments against Defendant Hattaway.  Plaintiff argues Defendant Hattaway delayed medical attention after Plaintiff fell on July 16, 2020.  Doc. 82 at 4.  Plaintiff also argues Defendant Hattaway refused to call medical on July 20, 2020, after Plaintiff stated he needed to be seen by the medical unit.  Id.  Both these arguments appear in Plaintiff's unsworn Response.

Plaintiff's own sworn testimony contradicts his first argument.  There, Plaintiff testified he fell at 12:00 p.m. but told no one about his injuries until another inmate saw Plaintiff at 3:00

p.m.  Doc. 67-9 at 43.  Plaintiff testified Defendant Hattaway arrived quickly after 3:00 p.m.  Id. at 44.  Defendant Hattaway then called the medical unit from the control booth to let them know Plaintiff needed medical attention.  Id. at 40.  Plaintiff submitted a medical record showing he was examined at the medical unit at 3:20 p.m.  Doc. 82-1.  These undisputed material facts show Defendant Hattaway helped Plaintiff get to the medical unit within 20 minutes of when Hattaway was informed of Plaintiff's injury.  This does not suggest any delay by Defendant Hattaway.

Plaintiff points to no evidence to support his second argument.  Defendant Hattaway's response to Plaintiff's interrogatory shows Hattaway called the medical unit after Plaintiff showed Defendant Hattaway his hand on July 20, 2020.  Doc. 67-4 at 4–5.  Plaintiff argues Defendant Hattaway refused to call medical, but Plaintiff cites no evidence to dispute Defendant Hattaway's interrogatory response.  Doc. 82 at 4.  At Plaintiff's deposition, he admitted he merely assumed Defendant Hattaway did not call medical because he was not taken to the medical unit.  Doc. 67-9 at 47–48.

In sum, Plaintiff has presented no evidence showing Defendant Hattaway acted with subjective recklessness as used in criminal law or Defendant Hattaway failed to act in an objectively reasonable way.  Defendant Hattaway has presented evidence he promptly took Plaintiff to medical on July 16, 2020, and called medical on July 20, 2020, after speaking with Plaintiff.  Thus, Defendant Hattaway is entitled to summary judgment.

### 2.    *Defendant Payne.*

On July 17, 2020, Plaintiff saw Defendant Payne, a non-medical correctional officer, while Payne was securing the facility for the lockdown.  Doc. 67-9 at 81–82.  Plaintiff asked Defendant Payne to contact the medical unit to follow up about the x-ray.  Id.  Plaintiff maintains Defendant Payne said he would call the medical unit but failed to do so.  Doc. 82 at 6.

Plaintiff presents no evidence to show Defendant Payne was subjectively aware his own conduct would cause Plaintiff a substantial risk of serious harm or Defendant Payne failed to act in an objectively reasonable way.  Plaintiff cites no evidence showing Defendant Payne knew about Plaintiff's condition or its seriousness.  Plaintiff's deposition testimony establishes Plaintiff saw Defendant Payne and told Defendant Payne about his morning x-ray appointment, and Payne told Plaintiff he would call the medical unit.  Doc. 67-9 at 81–82.  Even if Defendant Payne failed to call medical, nothing in the record shows Payne would have been aware his conduct would cause any risk other than, possibly, Plaintiff missing a scheduled x-ray.  Nothing in the record suggests Defendant Payne knew a missed x-ray would cause Plaintiff a substantial risk of serious harm.  Plaintiff has presented no evidence showing Defendant Payne acted with subjective recklessness as used in criminal law or Payne's conduct was objectively unreasonable.  Thus, Defendant Payne is entitled to summary judgment.

### 3.    *Defendant Cross.*

On July 17, 2020, Plaintiff saw Defendant Cross in the hallway, and Plaintiff asked her to contact the medical unit about the status of his x-ray.  Doc. 67-9 at 84–86.  Defendant Cross saw Plaintiff's hand had been wrapped and concluded medical staff had seen him.  Doc. 67-5 at 4–7.  Defendant Cross saw Plaintiff's hand was swollen, but she did not know it was broken.  Id. at 6–7.  In her interrogatory response, Defendant Cross stated she called medical and the medical staff informed her Plaintiff had been seen and there was no x-ray technician at the facility.  Id. at 4–7.

Plaintiff contends Defendant Cross did not call the medical unit.  Doc. 82 at 6.  Plaintiff submitted the sworn statement of another inmate, Kevin Welchel, stating Plaintiff asked Defendant Cross to call but she never did.  Doc. 82-3 at 1.

Plaintiff presents no evidence to show Defendant Cross was subjectively aware her own conduct would cause Plaintiff a substantial risk of serious harm or that Defendant Cross failed to act in an objectively reasonable way, given these circumstances.  Plaintiff cites no evidence showing Defendant Cross knew about Plaintiff's broken hand or serious medical need.  Plaintiff's deposition testimony establishes Plaintiff saw Defendant Cross, Plaintiff told Defendant Cross about his morning x-ray appointment, and Defendant Cross told Plaintiff she would call the medical unit.  Doc. 67-9 at 85.  Even if Defendant Cross failed to call medical, nothing in the record shows Defendant Cross was aware her conduct would cause any risk to Plaintiff, aside from, perhaps, Plaintiff missing a scheduled x-ray.  Nothing in the record suggests Defendant Cross knew a missed x-ray would cause Plaintiff a substantial risk of serious harm.  Plaintiff has presented no evidence showing Defendant Cross acted with subjective recklessness as used in criminal law or her conduct was objectively unreasonable.  Thus, Defendant Cross is entitled to summary judgment.

### 4.    *Defendant Hammock.*

At 7:00 p.m. on July 17, 2020, Plaintiff saw Defendant Hammock in a hallway and told Hammock no one had come to take him for his scheduled x-ray that day.  Doc. 67-9 at 71.  The next morning, Plaintiff saw Defendant Hammock again and complained about his hand.  Id. at 73–75.  Defendant Hammock returned during pill call with two nurses, including Defendant Hall, at which time Plaintiff discussed his injury with Defendant Hall.  Id. at 74–75.  Defendant Hall said she would have to talk to the supervising doctor about sending Plaintiff for outside treatment.  Id. at 75–77.  Defendant Hall provided Plaintiff with Tylenol and an icepack.  Id. Plaintiff saw Defendant Hammock again the next day, July 19, 2020.  Id. at 72.

Plaintiff contends Defendant Hammock forgot to call the medical unit for him on July 17, 2020. Doc. 82 at 6. Plaintiff contends Defendant Hammock told him on July 19, 2020, his injury was not a serious medical need, and Plaintiff was not going to the hospital for it. Id. at 5–6. Plaintiff cites the sworn statement of Kevin Welchel in support of these contentions. Doc. 82-3.

Plaintiff presents no evidence to show Defendant Hammock was subjectively aware her own conduct would cause Plaintiff a substantial risk of serious harm or Defendant Hammock failed to act in an objectively reasonable way. At the time Plaintiff first spoke to Defendant Hammock about his missed x-ray on July 17, 2020, there is no indication Defendant Hammock knew Plaintiff needed immediate medical attention. Similarly, there is nothing to show Defendant Hammock knew of a substantial risk of serious harm on July 18, 2020, especially after she accompanied a nurse—Defendant Hall—who treated Plaintiff's hand and then stated she (Hall) would speak with the supervising doctor. Even if Defendant Hammock incorrectly told Plaintiff his injury was not serious on July 19, 2020, there is nothing to show she knew her continued inaction would result in a substantial risk of serious harm.

Plaintiff has presented no evidence showing Defendant Hammock acted with subjective recklessness as used in criminal law or Defendant Hammock's conduct was objectively unreasonable. Thus, Defendant Hammock is entitled to summary judgment.

### 5.    *Defendant Little.*

On July 16, 2020, Defendant Little was present when Defendant Martyn examined Plaintiff at the medical unit. Defendant Little commented Plaintiff's hand looked broken. Doc. 67-9 at 68. On July 19, 2020, Plaintiff told Defendant Little he needed to go to the medical unit for his hand. Id. at 64–65. Defendant Little contacted the medical unit on Plaintiff's behalf.

Doc. 67-6 at 5.  Defendant Little was informed Plaintiff had already been seen by medical staff about his hand, so he did not need to be taken to the medical unit again for the same condition. Id.

Plaintiff presents no evidence to show Defendant Little was subjectively aware his own conduct caused Plaintiff a substantial risk of serious harm or that Defendant Little failed to act in an objectively reasonable way.  The record shows Defendant Little called medical to help Plaintiff but was told not to bring Plaintiff to the medical unit.  Plaintiff makes an unsupported assertion Defendant Little did not call medical.  Doc. 82 at 5.  Plaintiff's assertion does not create a dispute with Defendant Little's interrogatory response.  In his response, Defendant Little states he called the medical unit and was told Plaintiff did not need to be taken there.  Doc. 67-6 at 5.

In sum, Plaintiff has presented no evidence showing Defendant Little acted with subjective recklessness as used in criminal law or failed to act in an objectively reasonable way. Thus, Defendant Little is entitled to summary judgment.

### C.    Causation

Even if Plaintiff could prove the first two elements of the deliberate indifference test, he fails to point to any evidence that shows the State Defendants' action or inaction caused his injuries.

A plaintiff seeking to show a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed."  Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 (2002); see also Owen v. Corizon Health Inc., 703 F. App'x 844, 847 (11th Cir. 2017).

Plaintiff received an x-ray on his broken hand on July 30, 2020, and a doctor operated on his hand on August 3, 2020.  Doc. 67-9 at 54–55.  Plaintiff argues his x-ray (scheduled for July 17, 2020) was delayed because of the State Defendants' acts and omissions.  However, Plaintiff has presented no medical evidence that any delay in treatment had any detrimental effect.  There is nothing to show the 13-day delay between the time Plaintiff was first scheduled for an x-ray and when Plaintiff received an x-ray caused Plaintiff any further injury beyond his fracture. While Plaintiff suggests the delay in treating his hand "caused his hand to heal deformed," doc. 21 at 20, there is no evidence in the record supporting this assertion.  In fact, Plaintiff's medical record indicates the opposite: his hand healed, and he required only routine follow-up care.  Doc. 59-3 at 1–2.  Plaintiff provided a treatment record showing he received a second surgery on February 22, 2021, to remove a suture from his hand retained from the first surgery. Doc. 82-6.  There is nothing to suggest a delay in Plaintiff's initial treatment caused the retention of the suture or any other detrimental effect that had to be addressed with the second surgery. Thus, Plaintiff has failed to point to any evidence the State Defendants' actions caused him injury, and the State Defendants are entitled to summary judgment.[5]

## IV.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address this issue now.  See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

---

[5]    Because I find the State Defendants are entitled to summary judgment based on Plaintiff's failure to prove all the elements of a deliberate indifference claim, I need not address whether they are entitled to qualified immunity.

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** the State Defendants' Motion for Summary Judgment, **DISMISS** the State Defendants, and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal as to these Defendants. I further **RECOMMEND** the Court **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be

included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 14th day of August, 2024.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA